**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **NIDEC CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 6:07cv108** |
| | § | |
| **LG INNOTEK CO., LTD., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant LG Innotek USA's ("LG USA") Motion to Dismiss Plaintiff

Nidec Corporation's Complaint on the Basis of Lack of Personal Jurisdiction and Improper Venue

(Doc. No. 62).  Plaintiff Nidec Corporation has filed a Response (Doc. No. 68); Defendant LG USA

filed a Reply (Doc. No. 72); and Plaintiff also filed a Sur-Reply (Doc. No. 73).

On November 6, 2008, the Court held a hearing on the Motion.  Having fully considered the parties'

arguments and for the reasons set forth herein, the Court **RECOMMENDS** that Defendant's Motion

to Dismiss be **DENIED**.

**BACKGROUND**

On March 6, 2007, Plaintiff filed the instant action against Defendants LG Innotek Co., Ltd.

("LG"); LG Innotek Huizhou, Inc. ("LGH"); and LG Innotek U.S.A., Inc. ("LG USA")

(collectively, "Defendants"), alleging infringement of U.S. Patent Nos. 6,242,830 ("the '830 patent")

and 6,005,311 ("the '311 patent").[1]  The '830 and '311 patents claim spindle motors and related

apparatus ("spindle motors" or "Accused Products") commonly found in compact disc ("CD") and

---

[1]The '311 patent and Defendant LG USA were not originally included in the Complaint (Doc. No. 1), but were added by Plaintiff's First Amended Complaint ("AM. COMPLAINT") on June 27, 2008.  (Doc. No. 19).

digital video disc ("DVD") drives. MOTION at 1. As will be discussed in the following sections, Plaintiff alleges that Defendants produce the accused spindle motors and then sell the accused motors to global consumer electronics companies who utilize the spindle motors in their CD and DVD drives. RESPONSE at 8–13. Thus, while the motors are the Accused Products at issue in this litigation, the drives are the end user devices available for sale, which incorporate the accused spindle motors. *Id.* at 2.

Plaintiff Nidec is a Japanese corporation based in Kyoto, Japan. AM. COMPLAINT at 1. Defendant LG USA is a California corporation with its principal place of business in San Diego, California. MOTION at 4. LG USA is a wholly-owned subsidiary of LG, which is based in Seoul, Korea. RESPONSE at 2. On August 29, 2008, Defendant LG USA filed the instant Motion arguing both that this Court lacks jurisdiction and that venue is improper.[2] Defendant LG USA seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, Federal Rule of Civil Procedure 12(b)(3). *Id.* at 29.

## LEGAL STANDARD

Where, as here, a motion to dismiss is based solely on briefing without an evidentiary hearing, the burden of establishing a prima facie showing of jurisdiction is on Plaintiff. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (citations omitted). The Court must accept Plaintiff's uncontroverted allegations as true and resolve factual conflicts in Plaintiff's favor. *Id.* (citations omitted).

To establish personal jurisdiction, Plaintiff must show that, absent a controlling federal statute, jurisdiction is proper under Texas' long-arm statute and that the exercise comports with Due

---

[2] Defendants LG and LGH do not join the Motion.

Process.  *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376 (Fed. Cir. 1998) (citations omitted); *see also* Fed. R. Civ. Pro. 4(k)(1)(a).[3]  The long-arm statute in Texas is coextensive with due process requirements. *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 761–62 (Tex. 1977); *Diebold Election Sys., Inc. v. AI Tech., Inc.*, 562 F. Supp. 2d 866, 872 (E.D. Tex. 2008). Thus, the analysis requires only a single inquiry into the due process requirements for exercising personal jurisdiction over a non-resident defendant. *Diebold*, 562 F. Supp. 2d at 872.  Due process requires that a non-resident defendant have certain "minimum contacts" with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and such minimum contacts must generally be purposeful. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("purposefully established minimum contacts" remain "constitutional touchstone") (internal quotations omitted).

Where a defendant has "continuous and systematic" contacts with a forum-state the exercise of general personal jurisdiction is proper. *Elecs. for Imaging*, 340 F.3d at 1349 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).  When a defendant is not subject to general personal jurisdiction, the defendant may still be subject to specific personal jurisdiction. The Federal Circuit has outlined a three-prong test for determining whether the exercise of specific personal jurisdiction comports with due process.  Courts are directed to look at whether 1) the defendant purposefully directed its activities at residents of the forum state; 2) the claim arises out of or relates to the defendant's activities within the forum state; and 3) the assertion of personal jurisdiction is reasonable and fair. *Inamed Corp. v, Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)

---

[3]Federal Circuit law controls whether the exercise of personal jurisdiction comports with due process, while federal courts defer to the forum state's interpretation of its long-arm statute. *3D Sys.*, 160 F.3d at 1376–77.

(citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)).  A plaintiff bears the burden of proving that minimum contacts exist through the first two factors, while a defendant bears the burden of proving that the exercise of jurisdiction would be unreasonable, corresponding to the third factor. *Elecs. for Imaging*, 340 F.3d at 1350.

Finally, the stream of commerce theory has gained wide acceptance as a basis for personal jurisdiction since the Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*. 444 U.S. 286 (1980).  There, the Supreme Court held that the exercise of jurisdiction over a defendant is permissible when the sale of its product "is not simply an isolated occurrence, but arises from the efforts of the [defendant] to serve, directly or indirectly, the market for its product." *Id.* at 297.  Since *World-Wide Volkswagen*, courts have differed in their application of the stream of commerce theory for personal jurisdiction.

In *Asahi Metal Ind. v. Superior Ct.*, the Supreme Court issued a plurality opinion which has been interpreted as creating two distinct rules for applying this theory.  480 U.S. 102 (1987). Justice Brennan's concurring opinion—joined by Justices White, Marshall, and Blackmun—noted that simply placing a product in the stream of commerce was sufficient to justify jurisdiction, while Justice O'Connor—joined by Justices Rehnquist, Powell, and Scalia—would have held that placement in the stream of commerce alone would not be enough.  *Id.* at 117.  Justice O'Connor would have required that the defendant also take some "action . . . purposefully directed toward the forum state." *Id.* at 112.  Since *Asahi*, the Federal Circuit has declined to delineate any further limits on this theory.  *See e.g. Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (noting the split, but declining to choose one over the other because plaintiff had met both

versions of the test); *Marshall Packaging Co., LLC v. Nestle Waters N. Am., Inc.*, 6:05cv295, 2006 WL 871015, *2 (E.D. Tex. 2006) (same).

## DISCUSSION

Because the parties do not dispute that LG USA is not subject to general personal jurisdiction, and because the Court finds no jurisdictional facts to support such an argument, the Court will move straight into the analysis of whether Defendant LG USA is subject to specific personal jurisdiction in this District.

## I.     Specific Jurisdiction

Defendant LG USA argues that the exercise of specific personal jurisdiction would be improper in this case. MOTION at 11–12. LG USA argues that because it never made, used, sold, offered to sell or imported: i) components for spindle motors; ii) entire spindle motors; or iii) products containing spindle motors, and because the only products LG USA sells are tuners and modulators—neither of which contain spindle motors—it is not subject to jurisdiction in this forum. REPLY at 4–5. Finally, LG USA argues that the stream of commerce theory is inapplicable in this case because LG USA has never created, controlled, or employed a distribution system for any of its products. *Id.* at 5.

In response, Plaintiff argues that there is a conflict of fact regarding whether LG USA directly or indirectly serves the market for the Accused Products, such as by selling, offering to sell, or otherwise promoting the accused spindle motors. SUR-REPLY at 1–2. Plaintiff argues that it has provided evidence that at the time this lawsuit was filed LG USA sold or offered to sell the accused spindle motors. *Id.* at 2. Plaintiff further asserts that although Defendant denies this fact, controverted facts are resolved in Plaintiff's favor. *Id.* at 2–3.

In an action for patent infringement, allegations that a defendant purposefully shipped the accused product into the forum state through an established distribution channel are generally sufficient to establish specific personal jurisdiction. *Beverly Hills Fan Co.*, 21 F.3d at 1565 (citations omitted). The Federal Circuit has outlined a three-prong test for determining if specific personal jurisdiction exists. Courts are directed to look at 1) whether the defendant purposefully directed its activities at the residents of the forum; 2) whether the claim alleged by the plaintiff arises out of or is related to those activities by the defendant; and 3) whether the assertion of personal jurisdiction is reasonable and fair. *Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307–1308 (Fed. Cir. 1999) (citing *Akro*, 45 F.3d at 1545–46).

A.      **Minimum Contacts: Stream of Commerce Theory**

In patent cases where jurisdiction is premised on allegations of warning letters or licensing agreements, this framework is helpful for analyzing the defendant's contacts with the forum state. *See Akro*, 45 F.3d 1541, 1546–47 (Fed. Cir. 1995). However, the stream of commerce theory is more pertinent where, as here, the jurisdictional allegations relate to selling, distributing, or assisting with such infringing activities through intermediaries or distribution networks, resulting in the allegedly infringing articles being sold in the forum state. For example, in *Beverly Hills Fan Co.* the Federal Circuit went directly into the stream of commerce analysis in determining how a Chinese corporation which made an allegedly infringing product in Taiwan and which had no presence outside those two countries was subject to jurisdiction in the Eastern District of Virginia. *See e.g. Beverly Hills Fan Co.*, 21 F.3d 1559–60. Outside of the framework of the three-prong test noted above, it was clear in *Beverly Hills Fan Co.* that the accused products were present in Virginia as a result of an ongoing relationship with other companies participating in the distribution network,

6

and therefore this Chinese corporation "reasonably could have foreseen that a termination point of the [distribution] channel was Virginia." *Id.* at 1564.

Where, as here, jurisdiction is premised on the allegedly infringing activities—making, using, selling, offering to sell, or importing—and the isolated infringing activities occur as a single step in a full-scale distribution process, the stream of commerce theory is specifically evoked and particularly appropriate. Therefore, the Court will move directly to that theory. The stream of commerce theory has been widely applied and broadly interpreted in the federal courts. *See e.g. QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007) (noting the wide acceptance and lack of uniformity in applying the stream of commerce theory in the federal courts, as it comes in "several variants"). In addition to the cases previously noted from the Supreme Court and the Federal Circuit regarding the stream of commerce theory, there are two cases from this District that are also helpful to the instant analysis.

In *GSK Techs., Inc. v. Schneider Elec., S.A.*, GSK sued Schneider Electric and two other companies within Schneider Electric's corporate family for patent infringement. No. 6:06cv361, 2007 WL 788343, *1 (E.D. Tex. Mar. 14, 2007) (Davis, J.). Two of the defendants filed motions to dismiss, arguing that they lacked the requisite minimum contacts with the forum state. *Id.* The Court noted that although the two defendants denied that they introduced the accused products into any distribution network or any stream of commerce anywhere in the world, both were subject to the Court's jurisdiction. *Id.* at *2. The plaintiff provided evidence that the defendants promoted the brand name of the accused products and referred to this brand name on their websites as *their* brand name for the sale of the accused products in the United States. *Id.* at *3. Because the defendants failed to controvert the plaintiff's allegations that distribution channels had been intentionally set up

7

to flow from the corporate family to home improvement retailers across the United State and because defendants further failed to controvert the allegations that the accused products were found in such home improvement retailers in the District, the Court held that "it is only reasonable to assume that [the defendants] knew, or reasonably could have foreseen, that the [accused product] would be sold in the State of Texas." *Id.* at *2.

Similarly, in *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, the Court held that, despite the fact that the allegedly infringing products were in the forum state as a result of a unilateral decision by companies wholly unrelated to the defendant, the defendant was subject to personal jurisdiction. No. 2:05cv185, 2005 WL 3299718, *4 (E.D. Tex. Dec. 5, 2005) (Ward, J.). In so holding, the Court noted that "[b]ased upon the evidence presented to this Court, it is reasonably inferable that [defendant] knew and expected its [accused products] would be used as components in [the end user products] manufactured and distributed by [the exclusive licensee] to The Home Depot stores in the United States, including Texas." *Id.* at *4. The Court relied on the fact that defendant had granted a third-party distributor the exclusive right to sell the accused products within the United States and that the accused products were found in a nationwide retailer in Texas, specifically Home Depot. *Id.* at *4–*5.

Like the defendants in *GSK* and *Jacobs Chuck*, here Defendant LG USA argues that it does not make, sell, offer to sell, or import any Accused Products, and therefore the stream of commerce theory is insufficient to establish personal jurisdiction in this case. MOTION at 17–23. Defendant further contends that it never created, controlled, or employed a distribution system for any of its products, nor does it promote sales of the Accused Products or devices containing the Accused Products independently or through distribution channels." REPLY at 5–6.

8

Plaintiff contends that Defendant LG USA sells the Accused Products into the "stream of commerce" by supplying the Accused Products to global corporations like Nokia, Sony, Motorola, and Samsung.  RESPONSE at 10–11.  Further, Plaintiff alleges that the Accused Products are specifically intended for downstream use in consumer electronic products produced and sold by these global corporations, and thus Defendant LG USA could have reasonably "foreseen that the Accused Products would end up in Texas" when these global consumer electronic companies placed their products incorporating the Accused Products for sale at nationwide retail stores like Best Buy. *Id.* at 10–12.  Finally, it is undisputed that the accused spindle motors are a component within certain DVD drives available for purchase in Texas, as well as within this District.  RESPONSE at 3; IMAI DEC., EXH. C at ¶¶ 3–5; ITO DEC., EXH. D at ¶¶ 4–6.

Based on *GSK* and *Jacobs Chuck*, Plaintiff has put forth a plausible theory for jurisdiction, and Plaintiff has further supported this theory with credible evidence.  Plaintiff has asserted and shown that LG USA is a subsidiary of LG, RESPONSE at 2, and that these companies have—at minimum—a relationship in which they share certain resources.  *Id.* at 2–3; AUITO DEC., EXH. B-1 at 1–3.  Plaintiff has further asserted and shown through credible evidence that LG has global hubs, including one in the United States, which enable LG to supply cutting-edge core components—including the accused spindle motors—to global consumer electronics companies like Nokia, Sony, Motorola, and Samsung.  RESPONSE at 3; AUITO DEC., EXH. B-1 at 1–3, EXH. B-3 at 1, EXH. B-4 at 1.  Plaintiff has also produced evidence that LG USA sells all products made by LG—including the accused spindle motors.  RESPONSE at 3; AUITO DEC., EXH. B-1 at 1–3.  Until recently, LG USA was the only LG branch operating  in the United States.  AUITO DEC., EXH. B-1 at 1–3, EXH. B-2 at 1.  Although it will be outlined more thoroughly in the following

paragraphs, it is reasonable to conclude based on this evidence that the global hub in the United States is—or at least was as of May 2008—LG USA.

Plaintiff's proffered evidence surrounding LG USA's alleged sales or offers to sell the accused spindle motors comes from a website—http://www.lginnotek.com—purported to be owned and operated by LG USA's parent company, LG. AUITO DEC., ¶¶ 3–6. A copy of an image from the website from May 2008, attached as an exhibit to Plaintiff's Response, outlines LG's global operations. AUITO DEC., EXH. B-1, B-2. Specifically, the website notes:

> LG [] is operating production and sales units, as well as R & D labs in 12 global hubs including those located in Asia, the United States, and Russia. . . . This enables us to supply cutting-edge core components to other global corporations, such as Nokia, Sony, Motorola, Sagem, Novatel, Sharp, LG, and Samsung.

EXH. B-1. Below this paragraph, the website lists twelve branches, along with contact information for each. *Id.* The fifth branch listed is LG Innotek U.S.A. Inc. (LGITUS)—LG USA—the only branch located in the United States.[4] *Id.* Thus, it seems a reasonable inference that LG USA is one of the twelve global hubs, which operates production units, sales units, and R & D labs, as previously noted.

Underneath the branch name—LG Innotek U.S.A. Inc. (LGITUS)— the site notes a category of "Sales" and lists "All Product." *Id.* For comparison, the LG Innotek Indonesia PT. (LGITIN) branch notes a category of "Produce" and lists "Tuner, VCR Motor, VCR Head." *Id.* Similarly, the LG Innotek Mexicalli S.A. DE C.V. (LGITMX) branch notes a category of "Produce" and lists "Tuner, RF Modulater." *Id.* Further, the RF Lab (Russia) branch notes a category of "R&D" and lists "RF R&D Center." *Id.* While a number of these branches have particularized listings of their

---

[4]This website now lists two other branches in the United States.

respective activities, LG USA is listed as a sales unit dealing with all products.  This evidence indicates that LG USA operates as a sales unit for its parent company, LG, selling all products, and it is reasonable to infer that this includes the accused spindle motors.

Finally, Plaintiff has produced evidence that the accused drives were sold at a Best Buy in this District in February of 2007.  RESPONSE at 3; IMAI DEC., EXH. C at ¶¶ 3–5; ITO DEC., EXH. D at ¶¶ 4–6.  Based on all the evidence submitted by Plaintiff, it is a reasonable inference that LG USA was—at least as of May 2008—a sales unit or global hub of some similar function for LG in the United States operating to sell or otherwise enable LG to sell the accused spindle motors to consumer electronics companies like Sony and Samsung, who intended to implement the drives into their end-user electronic products to later be sold at nationwide retailers like Best Buy.  *See Jacobs Chuck*, 2005 WL 3299718 at *3 ( "[b]ased upon the evidence presented to this Court, it is reasonably inferable that [defendant] knew and expected its [accused products] would be used as components in [the end user products] manufactured and distributed by [the exclusive licensee] to The Home Depot stores in the United States, including Texas.").  Even if LG USA is not currently the global sales hub for LG, the evidence supports an inference that *at the time Plaintiff filed suit*, LG USA sold the accused products to consumer electronic companies with a reasonable expectation that they would eventually be sold at nationwide retailers.  Collectively, this evidence constitutes a *prima facie* showing that Defendant LG USA has sufficient minimum contacts to be subject to personal jurisdiction in this District.

Although Defendant LG USA attempts to rebut much of this evidence through declarations and argument, the Court is left merely with a myriad of uncontroverted assertions and one significant factual conflict.  Plaintiff has provided credible evidence from Defendant LG USA's parent

11

corporation that at the time the instant case was filed, LG USA sold the accused products. Similar evidence gleaned from the defendants' websites supported jurisdiction over the defendants in *GSK*, despite their denial of any part in introducing the accused products into the stream of commerce. 2007 WL 788343 at *3. LG USA responds with two declarations indicating that the website at the basis of Plaintiff's evidence was simply incorrect. LEE DEC. at ¶¶ 5, 6. LG USA does not contest the validity of the evidence, just the veracity of the assertion contained therein. Moreover, LG USA similarly denies any involvement in a distribution system for the Accused Products. REPLY at 2. This is a direct conflict of fact, and such conflicts are viewed in the light most favorable to the Plaintiff. *Electronics for Imaging*, 340 F.3d at 1349 (citations omitted). Moreover, it is important to note that the Court here may not determine whether Plaintiff has proven the contentions supporting jurisdiction, but may only decide whether Plaintiff has put forth a *prima facie* showing of jurisdiction. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). Taking the conflict of fact noted above in a light most favorable to Plaintiff, together with the remainder of the uncontroverted facts noted above, Plaintiff has a plausible theory, supported with credible evidence, that Defendant LG USA has sufficient minimum contacts to be subject to personal jurisdiction in this District.

    **B.**    **Reasonableness**

The second step in any personal jurisdiction analysis requires a determination whether it is reasonable to require a defendant to defend against a suit in this District. *Asahi*, 480 U.S. at 113. In other words, the exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. at 316). Thus, "[o]nce a plaintiff makes the required showing that there have been sufficient minimum contacts by the

out-of-state defendant with the forum State, the defendant may still defeat jurisdiction by marshaling a compelling case against jurisdiction on the grounds that its exercise would be unreasonable, contrary to concepts of fair play and substantial justice." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996). This determination requires an evaluation of five factors: 1) the burden on the defendant; 2) the interests of the forum state; 3) plaintiff's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social justice. *Asahi*, 480 U.S. at 113.

LG USA asserts that the burden of defending suit in Texas is great because its corporate records and employees are in California and Illinois. MOTION at 24. However, courts commonly find that the burden of defending suit in another state or foreign country is not so great as to defeat jurisdiction. *See Beverly Hills Fan Co.*, 21 F.3d at 1569 (holding foreign defendant to jurisdiction in Virginia); *GSK*, 2007 WL 788343 at *4 (holding Delaware corporations subject to jurisdiction in Texas); *Jacobs Chuck*, 2005 WL 3299718 at *9 (holding that jurisdiction over Chinese-based company was reasonable in part because "[t]he same technology that facilitates [defendant] Weida conducting business with customers in eighty countries equally facilitates its ability to defend itself from claims of patent infringement in countries where its products arrive."). LG USA has not shown that the burden of defending against this suit in Texas is great enough to make it unreasonable for this Court to exercise jurisdiction.

Texas also has a significant interest in preventing patent infringement within its borders and thus preventing injuries within the state. *See Beverly Hills Fan Co.*, 21 F.3d 1568; *GSK*, 2007 WL 788343 at *4. Plaintiff Nidec alleges that Defendants infringe Nidec's '830 and '311 patents, and

13

thus Plaintiff has a strong interest in obtaining relief.  Finally, there is nothing extraordinary about this case such that the interest of the interstate judicial system in obtaining the most efficient resolution or the shared interest of the several states in furthering fundamental substantive social justice would weigh against the exercise of jurisdiction.

Balancing these five factors, this is not "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Viam*, 84 F.3d at 429 (internal quotations omitted).  Nor are the interests in litigating in this forum so attenuated to be clearly outweighed by any interest LG USA has in litigating elsewhere.  *See GSK*, 2007 WL 788343 at *4.  Therefore, it is reasonable to require Defendant LG USA to defend Plaintiff Nidec's claims in this District because the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Asahi*, 480 U.S. at 113 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. at 316).

## II.    Venue

Alternatively, Defendant LG USA argues that this case should be dismissed because venue is improper.  MOTION at 25.  Defendant LG USA asserts that this Court lacks personal jurisdiction over it, and therefore venue is not proper under the first prong of title 28, section 1400(b).  *Id.* at 26.

Venue is proper in actions for patent infringement in any district where the defendant resides, 28 U.S.C.A. § 140(b), and corporate defendants are deemed to reside in "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C.A. § 1391(c).  As noted in the previous section, this Court has found that the evidence supports an inference that at the time Plaintiff filed suit, LG USA sold the Accused Products to

14

consumer electronic companies with a reasonable expectation that they would eventually be sold at nationwide retailers, such as Best Buy. Moreover, the accused spindle motors were found in DVD drives being sold at a Best Buy within this District. RESPONSE at 3; IMAI DEC., EXH. C at ¶¶ 3–5; ITO DEC., EXH. D at ¶¶ 4–6. Therefore, based on the stream of commerce theory discussed previously, not only is LG USA subject to personal jurisdiction in the forum state, but LG USA is also subject to personal jurisdiction in this District because LG USA's "contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C.A. § 1391(c). Thus, venue is proper because Defendant LG USA is subject to personal jurisdiction in this District.

## CONCLUSION

For all the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion be **DENIED**. Within ten (10) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten (10) days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 11th day of December, 2008.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE